No. 91-316

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JOHN J. STUART and LEE J. TICKELL,

      Plaintiffs and Appellants,

-vs-

DEPARTMENT OF SOCIAL AND
REHABILITATION SERVICES, a state
agency within the executive branch
of state government, and the
STATE OF MONTANA,

      Defendants and Respondents.

FILED

JAN 29 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

         Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena,
Montana

      For Respondents:

         G. Curtis Drake; Keller, Reynolds, Drake, Sternhagen
& Johnson, Helena, Montana

      For Amicus Curiae:

         Carter N. Picotte, Attorney at Law, Helena, Montana
(Montana Public Employees' Association)

Submitted on Briefs:  March 26, 1992

Decided:  January 29, 1993

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

John Stuart and Lee Tickell appeal from the grant of summary judgment to the Montana Department of Social and Rehabilitation Services (SRS) by the First Judicial District Court, Lewis and Clark County. We affirm.

The issues are:

1. Did SRS's refusal to pay appellants their accrued vacation benefits violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution?

2. Did SRS's refusal to pay appellants their accrued vacation benefits violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

3. Is § 2-18-617(2), MCA, the statute upon which SRS relied when it withheld appellants' accrued vacation benefits, either an unconstitutional delegation of legislative authority to an administrative agency or unconstitutionally vague?

In early 1989, SRS began an investigation of sexual misconduct allegations lodged against Tickell. SRS concluded that improper conduct had occurred and began formal disciplinary proceedings against Tickell. Subsequently, the State investigated acts of vandalism allegedly committed by both Stuart and Tickell against a former SRS employee. This investigation led to the filing of criminal mischief charges against Stuart and Tickell.

On July 21, 1989, SRS notified Stuart and Tickell by separate letters that they would be terminated, effective July 31. Stuart's letter explained that SRS was terminating him because of the

2

criminal investigation. Tickell's letter cited both the criminal investigation and the earlier SRS sexual misconduct investigation as the bases for his termination. Stuart and Tickell wrote to SRS and requested their accrued vacation benefits and compensatory time. SRS replied by letter, refusing to pay the accrued benefits.

Stuart and Tickell agreed to defer any challenge to the termination itself until after the conclusion of the criminal proceedings. On September 20, 1989, a jury found Stuart and Tickell guilty of criminal mischief. The court sentenced them to jail terms and monetary fines. Stuart and Tickell then waived any future challenge to the termination of their employment but preserved their claim to accrued vacation benefits and compensatory time.

On October 6, 1989, Stuart and Tickell filed this action in the District Court. They sought a declaratory judgment that SRS was obligated to pay them accrued vacation benefits and compensatory time. SRS subsequently moved for summary judgment, arguing that the denial of accrued benefits was not subject to judicial review because Stuart and Tickell had not exhausted their administrative remedies. Stuart and Tickell filed a cross-motion for summary judgment. The District Court granted summary judgment for SRS on June 18, 1990. The court agreed with SRS's contention that the declaratory judgment action was premature because Stuart and Tickell had not exhausted their administrative remedies. Stuart and Tickell appealed.

We reversed and remanded in Stuart v. Dept. of Social & Rehab. Serv. (1991), 247 Mont. 433, 807 P.2d 710 (Stuart I). Noting that "the exhaustion doctrine is not applicable to constitutional issues," we remanded for further consideration of Stuart's and Tickell's constitutional claims. Stuart I, 807 P.2d at 713. On remand, the parties and amicus curiae Montana Public Employees' Association briefed and argued the constitutional issues. On June 13, 1991, the District Court again granted summary judgment for SRS. Stuart and Tickell appealed.

I

Did SRS's refusal to pay appellants their accrued vacation benefits violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution?

The District Court concluded that appellants' constitutional guarantee against double jeopardy was not violated when SRS refused to "cash out" their accumulated vacation leave under § 2-18-617, MCA. We begin by considering the statutory context in which the case arises.

Chapter 18 of Title 2 of the Montana Code Annotated is entitled State Employee Classification, Compensation, and Benefits; it expresses in statutory format the employment policy of the State of Montana, as enacted by the Montana Legislature, which applies to employees of the State. Part 6 thereof contains the provisions relating to vacation leave which are relevant to the case before us.

4

Section 2-18-611, MCA, establishes the right of certain public employees to earn annual vacation leave credits. Such vacation leave credits are earned and accrued from the first day of employment for employees entitled to earn them at all. Id. The statute goes on to specify certain employees who are not entitled to earn such credits and provides for nonaccrual of credits during any leave-without-pay period. Id. Finally, § 2-18-611(1), MCA, imposes a specific condition on when earned vacation credits can be exercised; namely, an employee is not entitled to any vacation leave with pay until she or he has been continuously employed for a period of six months. This single statute makes it clear from the outset that no absolute right to earn or exercise vacation leave credits exists; any entitlement to earn or exercise vacation leave credits is purely a matter of statute. Indeed, the legislature further conditioned the exercise of vacation leave benefits in § 2-18-616, MCA, by providing that the dates when vacation leave can be taken are to be determined by agreement between the State and the employee.

The Montana legislature enacted additional statutory provisions regarding vacation leave in § 2-18-617, MCA, the statute at issue here. Specifically, the legislature adopted a "use it or lose it" approach to accumulating earned vacation leave; vacation leave in excess of the amount the statute authorizes to be accumulated is forfeited. Id. Finally, the legislature granted employees an entitlement to "cash out" accumulated vacation leave at the time their service terminates under certain conditions:

5

first, that the employee has worked the qualifying period of time; and second, that employment terminates for reasons "not reflecting discredit" on the employee. Id. Absent § 2-18-617, MCA, no right whatsoever would exist whereby employees could either accumulate vacation leave or "cash out" unused leave on termination of employment. The legislature, having created these rights, elected to condition them.

It is clear that appellants' vacation leave credits were earned and accrued over the period of their service pursuant to the statutory provisions and that they had worked the qualifying period of time. They remained free to exercise their vacation credits subject only to the statutory requirement that the dates be agreeable to the employer. Appellants do not dispute, and have not disputed throughout these lengthy proceedings, SRS's determination that their termination of employment was for reasons reflecting discredit upon themselves. Thus, it is also clear that appellants do not meet the second precondition to entitlement to "cash out" accumulated vacation leave imposed by § 2-18-617, MCA: their termination was not for reasons "not reflecting discredit" on themselves. Having failed to satisfy the statutory prerequisite to entitlement, we conclude that appellants were not entitled to compensation for accumulated vacation leave.

Notwithstanding this failure, appellants assert that application of § 2-18-617, MCA, violates their constitutional guarantee against double jeopardy. We disagree.

6

The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb. . . ." Double jeopardy protects citizens from a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65. The United States Supreme Court has held that, under certain circumstances, civil as well as criminal sanctions may constitute prohibited double punishment. United States v. Halper (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487.

Relying on Halper, appellants contend that application of § 2-18-617, MCA, to prevent their "cash out" entitlement constitutes a civil sanction or penalty and the sanction serves a punishment or retribution goal rather than the remedial purpose of compensating the State for its loss. Specifically, they argue that the withholding of their accrued benefits is a civil sanction constituting unconstitutional double punishment because they already have been subjected to criminal sanctions in the criminal mischief prosecution. It is this relationship between their criminal convictions and SRS's refusal to pay their accrued vacation leave that appellants argue converts their failure to satisfy a statutory precondition to cashing out vacation leave into a violation of double jeopardy under Halper.

7

Halper falsified 65 Medicare forms to obtain overpayment in the total amount of $585. The government successfully prosecuted Halper for fraud and he was sentenced to prison and fined. After the conclusion of the criminal proceedings, the government commenced an action for a statutory civil penalty under the False Claims Act which--based solely on the $2,000 penalty per violation imposed by the Act--would have amounted to $130,000 in addition to the previous criminal sentence of imprisonment and fines. Halper, 490 U.S. at 437-38.

The specific issue before the Court in Halper was whether and under what circumstances a civil penalty may constitute punishment for purposes of the Double Jeopardy Clause. Id. at 446. It was undisputed in Halper that the government was seeking to enforce an actual statutory civil sanction or penalty against a person already subjected to criminal punishment for the same conduct. The unanimous Court held that the double jeopardy clause prohibits subjecting a defendant who has been punished in a criminal prosecution "to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." Id. at 449.

Halper is inapposite here. Unlike Halper, our analysis begins with the question of whether a civil sanction existed here; that is, whether § 2-18-617(2), MCA, constitutes a civil sanction.

In Halper, the subsequent proceeding specifically was undertaken to impose a statutory civil sanction. "Sanction" is defined by Webster's Third New International Dictionary as "the

8

detriment, loss of reward, or other coercive intervention that is annexed to a violation of a law as a means of enforcing the law. . . ." The facts in Halper clearly met this definition: the "detriment" to Halper, in the guise of the subsequent remedy sought by the government, was "annexed to a violation" of the False Claims Act as a means of enforcing that law. In other words, Halper's conduct violated two separate laws--one criminal and one civil--and the government sought to enforce both in separate proceedings.

In the case before us, there is no subsequent proceeding seeking an additional remedy. The detriment to appellants--lack of entitlement to "cash out" their vacation leave--was not annexed to a violation of any law. Indeed, the "detriment" was caused solely by appellants' failure to satisfy the statutory precondition that employment terminate for reasons not reflecting discredit on themselves. Failure to satisfy a condition does not equate to violating a law and facing an additional enforcement proceeding. We conclude that the refusal to compensate appellants for their unused vacation leave did not constitute a civil sanction. For that reason, Halper does not apply and we need not address the additional Halper considerations.

We hold that the District Court did not err in concluding that appellants' constitutional guarantee against double jeopardy was not violated.

Did SRS's refusal to pay appellants their accrued vacation benefits violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

Stuart and Tickell argue that because they are the only SRS employees who have ever been refused accrued benefits upon termination, the refusal by SRS to pay over their benefits constitutes a violation of the Equal Protection Clause of the United States Constitution. However, the Equal Protection Clause is not violated solely because all similarly situated persons are not treated identically. The injured party must also establish that the discrimination is based on "'an impermissible ground such as race, religion or exercise of . . . constitutional rights.'" United States v. Kidder (9th Cir. 1989), 869 F.2d 1328, 1336, quoting United States v. Moody (9th Cir. 1985), 778 F.2d 1380, 1386, amended on other grounds, 791 F.2d 707 (9th Cir. 1986).

Stuart and Tickell assert that SRS based its decision to withhold their benefits on an impermissible ground--their attempted exercise of constitutional rights. They claim that SRS discriminated against them because (1) they refused to plead guilty to the criminal charges; and (2) they campaigned for gubernatorial candidate Tom Judge.

In considering whether the record reveals genuine issues of material fact, the trial court is limited to pleadings, depositions, answers to interrogatories, admissions, and affidavits. Rule 56(c), M.R.Civ.P. We have reviewed these

10

portions of the District Court record and find no evidence to support either of appellants' assertions.

In Small v. McRae (1982), 200 Mont. 497, 522, 651 P.2d 982, 995, we noted that "it should be kept in mind that the bare assertions found in appellant's briefs are not sufficient to defeat a motion for summary judgment." Therefore, we conclude that the District Court did not err in entering summary judgment dismissing appellants' allegation that SRS's conduct violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.


## III

Is § 2-18-617(2), MCA, the statute upon which SRS relied when it withheld appellants' accrued vacation benefits, either unconstitutionally vague or an unconstitutional delegation of legislative authority to an administrative agency?

Section 2-18-617(2), MCA, pursuant to which appellants' benefits were withheld, provides:

> An employee who terminates his employment for reason not reflecting discredit on himself shall be entitled upon the date of such termination to cash compensation for unused vacation leave, assuming that the employee has worked the qualifying period set forth in 2-18-611. [Emphasis added.]

Appellants contend that the phrase "reflecting discredit on himself" lacks specificity because it is susceptible to a number of different interpretations. This asserted lack of specificity provides the foundation for appellants' alternative constitutional attacks; namely, that the statute is unconstitutionally vague or

11

that it is an unconstitutional delegation of legislative power without the necessary standards. We decline to address the merits of these arguments in this case because we conclude that appellants lack standing to assert them.

In Hoffman Estates v. Flipside, Hoffman Estates (1982), 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362, the United States Supreme Court considered the problem of third-party standing in an attack on a local ordinance that purported to regulate "head shops." Hoffman Estates had passed an ordinance that regulated the sale of items "designed or marketed for use" with marijuana or other illegal drugs. Hoffman Estates, 455 U.S. at 491, 102 S.Ct. at 1190, 71 L.Ed.2d at 367. The Flipside contended that the ordinance violated the First Amendment freedom of speech clause and the Fourteenth Amendment due process clause because the phrase "designed and marketed for use" was both over-broad and vague. Hoffman Estates, 455 U.S. at 493, 102 S.Ct. at 1191, 71 L.Ed.2d at 368.

The Court said:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. [Emphasis added.]

12

Hoffman Estates, 455 U.S. at 494-95, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. The Court concluded that because The Flipside sold at least some of the items prohibited by the ordinance, the ordinance was not vague as applied to The Flipside. Hoffman Estates, 455 U.S. at 502, 102 S.Ct. at 1195, 71 L.Ed.2d at 374.

Stuart and Tickell lack standing under Hoffman Estates. With respect to the facial vagueness analysis, Stuart and Tickell must show that this statute is impermissibly vague as it applies to them. They may not do so by showing that it is vague "as applied to the conduct of others." See Hoffman Estates, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. Appellants' unconstitutional delegation attack meets the same fate, premised as it is on lack of specificity and definiteness. We have held on numerous occasions that a person neither injured nor jeopardized by the operation of a statute cannot challenge its constitutionality. See State v. Kirkland (1979), 184 Mont. 229, 235, 602 P.2d 586, 590 (citing cases).

Although it may be unclear what "reflecting discredit on himself" means in other circumstances, it is quite clear that in this case the conduct for which Stuart and Tickell were convicted reflected discredit upon them. At no point in this litigation have they argued otherwise. This failure to allege and prove exactly how they were unfairly swept into the operation of a possibly vague statute precludes us from addressing this issue on its merits.

We note appellants' assertion that we held in Stuart I that they did have standing to raise these constitutional issues and,

13

therefore, that <u>Stuart I</u> is the law of the case with regard to standing. Appellants' interpretation of <u>Stuart I</u> is erroneous.

In <u>Stuart I</u>, the district court determined that the failure of Stuart and Tickell to exhaust their administrative remedies precluded constitutional challenges to § 2-18-617, MCA. We reversed, stating that they were not precluded from challenging the statute's constitutionality "<u>solely</u> on the basis that they failed to exhaust their administrative remedies." <u>Stuart I</u>, 807 P.2d at 713 (emphasis added). We neither addressed nor determined the standing issue.

Affirmed.

<u>/s/ Karla M. Gray</u>
Justice

We concur:

<u>/s/ J. A. Turnage</u>
Chief Justice

<u>/s/ John Conway Harrison</u>

<u>/s/ R. C. McDonough</u>

<u>/s/</u>
Justices

Justice Terry N. Trieweiler dissenting.

I concur with the majority's disposition of Issues II and III.

I dissent from the majority's resolution of Issue I.

No matter how bad a person's conduct, the United States Constitution provides that he or she can only be punished once for the same crime. In this case, plaintiffs were punished in the criminal justice system for their crime, and then punished a second time when they were denied their accrued benefits based on the exact same conduct.

Even though the majority tries to finesse this issue by constructing a "conditional benefit", the fact is that plaintiffs had benefits coming to them which they would have received were it not for their misconduct. To categorize the denial of their benefits as anything other than a penalty is a weak effort to exalt form over substance.

In *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487, Justice Blackmun, writing for a unanimous Supreme Court, concluded that the government's $130,000 civil recovery was disproportionate to its actual damages and said that:

> We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
>
> . . . Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to

15

determine if the penalty sought in fact constitutes a second punishment.

*Halper*, 490 U.S. at 448-50.

The District Court did not address this issue because it concluded that the right to receive accrued benefits is merely conditional and the denial of that right is, therefore, not a sanction. The majority, by discussing preconditions to "cashing out" accumulated vacation benefits, adopts the District Court's line of reasoning. I disagree.

Under § 2-18-611(1), MCA, the employee begins earning vacation credits on the first day of employment. I agree with the California Supreme Court that the right to "vacation [benefits] 'vests' as the labor is rendered." *Suastez v. Plastic Dress-Up Co.* (Cal. 1982), 647 P.2d 122, 128.

In *Suastez*, the plaintiff sought recovery of vacation benefits under a California statute that prohibited employers from providing for the forfeiture of "vested" vacation time. It was the company's policy that vacation pay did not vest until the anniversary of the employee's employment. After surveying case law from several jurisdictions, the California court concluded that vacation pay is a form of "deferred compensation." *Suastez*, 647 P.2d at 125. It then compared vacation pay to pension benefits and held that some of the rights to the benefits vest at the same time as the labor is rendered, even though the full bundle of rights is not available until later and <u>may</u> be subject to forfeiture. *Suastez*, 647 P.2d at 125-126. Forfeiture prevents the accrual of the whole bundle of rights, but it does not prevent at least some of the rights from

16

vesting at the time the employee performs services for the employer. *Suastez*, 647 P.2d at 126.

Thus, the denial of accrued vacation benefits in this case is a denial of Stuart and Tickell's vested rights. Benefits which began to accrue on the day they began work were taken from them based on the fact that they were terminated for misconduct. This is clearly a "sanction" and because it occurred after the imposition of criminal sanctions, it requires analysis under *Halper*. *Halper* requires a determination of whether "the civil penalty sought in the subsequent proceeding bears [a] rational relation to the goal of compensating the government for its loss." *Halper*, 490 U.S. at 449.

Here the District Court made no such determination. The record is devoid of any evidence that SRS sustained any loss because of its employees' conduct, and if so, how the value of that loss compares to the value of the benefits that were forfeited. Accordingly, I would reverse the summary judgment entered by the District Court and remand this case for a determination by the District Court of SRS's damages and whether the denial of all of plaintiffs' accrued vacation benefits "bears [a] rational relation" to those damages.

For these reasons I dissent from the majority opinion.

_____
                    Justice

17

Justice William E. Hunt, Sr.:

I concur in the dissent of Justice Trieweiler.

William E Hunt Sr
                    Justice