No. 99-356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 152

300 Mont. 115

4 P. 3d 1

STATE OF MONTANA,

Petitioner and Appellant,

v.

JESSE EAGLE SPEAKER,

Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General; Clay R. Smith,

Assistant Attorney General, Helena, Montana

Larry D. Epstein, Glacier County Attorney; Thane P. Johnson,

Deputy County Attorney, Cut Bank, Montana

For Respondent:

Joe J. McKay, Attorney at Law, Browning, Montana

Submitted on Briefs: January 13, 2000

Decided: June 8, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 The State appeals from the Order Granting Defendant's Motion to Dismiss Information issued by the Ninth Judicial District Court, Glacier County. We affirm.

¶2 The State raises the following issue on appeal:

¶3 Whether the District Court erred in dismissing the Information for lack of jurisdiction?

FACTUAL BACKGROUND

¶4 The State filed an Information on January 5, 1999, charging Jesse Eagle Speaker with five counts of felony theft in violation of § 45-6-301(1)(a), MCA. The State alleged that Eagle Speaker purposely or knowingly obtained or exerted unauthorized control over five horses. The State alleged that each theft commenced in Glacier County, Montana, and proceeded to Toole County, Montana. The deputy county attorney for Glacier County declared that on November 5, 1998, Eagle Speaker brought the horses to the Bar S Feedlot in Shelby, Montana, and told the operator of the feedlot that the horses were unbranded. After clipping their coats, the operator discovered that all the horses were branded and called a local brand inspector. According to the deputy county attorney's affidavit, three of the horses belonged to three separate owners residing in Browning, Montana. Of the other two horses, one bore a brand registered to a ranch located in Arlee, Montana, and the other bore the brand registered to an individual in Lewistown, Montana. The ownership of these two horses was not determined at the time the affidavit was filed. The State further alleged

that Eagle Speaker returned to the Bar S Feedlot on November 11, 1998, and advised the operator that the horses were in his pasture tearing down his fences so he brought them to sell.

¶5 On March 30, 1999, Eagle Speaker filed a motion to dismiss contending that the District Court lacked jurisdiction over him or over the alleged crimes. In his motion, Eagle Speaker asserted that he was a descendant of an enrolled member of the Blackfeet Indian Tribe and that he was enrolled in the Blood Band of Alberta, Canada. He also claimed that the alleged crime occurred on the Blackfeet Indian Reservation and that the three identified owners were members of the Blackfeet Tribe. Regarding the other two horses, Eagle Speaker stated that the people to whom the brands on those horses were registered had not reported any stolen property. Eagle Speaker contended that as a result of these facts, the District Court was without jurisdiction and that the Information must be dismissed.

¶6 On April 14, 1999, the State filed its response to Eagle Speaker's motion to dismiss. The State contended that the District Court should deny Eagle Speaker's motion because all of the elements of theft, purposely or knowingly exerting unauthorized control with the purpose of depriving the owner of the property, occurred beyond the boundaries of the Blackfeet Reservation when Eagle Speaker transported the horses through Toole County for the purpose of selling them. Eagle Speaker replied that the State's contention that elements of the alleged crime occurred outside the Blackfeet Reservation was erroneous because by the time he left the Blackfeet Reservation all the elements of the alleged theft had already transpired.

¶7 The District Court granted Eagle Speaker's motion to dismiss on June 2, 1999. The court concluded that the State did not have jurisdiction to prosecute. The State appeals.

STANDARD OF REVIEW

¶8 The decision to grant or deny a motion to dismiss in a criminal case is a question of law. *See City of Helena v. Danichek* (1996), 277 Mont. 461, 463, 922 P.2d 1170, 1172 (citing *State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195). We review a district court's conclusion of law to determine whether it is correct. *See Danichek,* 277 Mont. at 463, 922 P.2d at 1172.

DISCUSSION

¶9 Whether the District Court erred in dismissing the Information for lack of jurisdiction?

¶10 The parties agree that Montana's district courts do not have criminal jurisdiction over Eagle Speaker's conduct within the Blackfeet Reservation. The State contends that the dispositive issue is whether there is probable cause to believe that the offense of felony theft occurred in whole or in part outside the Reservation. In this regard, the State argues that the District Court has jurisdiction over Eagle Speaker pursuant to § 46-2-101(1)(a), MCA, which provides that a person may be subject to criminal prosecution in Montana so long as at least one element of the offense occurred within this state. The State alleges that there is probable cause to believe that both elements of felony theft, as prohibited by § 45-6-301(1)(a), MCA, occurred outside the Blackfeet Reservation when Eagle Speaker attempted to sell the horses in Shelby, Montana.

¶11 Eagle Speaker maintains that because the District Court correctly determined that the alleged crime of felony theft occurred entirely within the Blackfeet Reservation, and because the crime of felony theft is not a continuing offense, the District Court properly dismissed the Information for lack of jurisdiction.

¶12 Section 46-2-101(1)(a), MCA, provides that "[a] person is subject to prosecution in this state for an offense which he commits while either within or outside the state . . . [if] the offense is committed either wholly or partly within the state." Section 46-2-101(2), MCA, further provides that "[a]n offense is committed partly within this state if . . . an element of the offense . . . occurs within the state." Generally, Montana courts lack jurisdiction to "prosecute an offense committed within the exterior boundaries of an Indian reservation where the defendant is an Indian, or where the victim is an Indian." *State v. LaPier* (1990), 242 Mont. 335, 340, 790 P.2d 983, 986 (citing *State v. Greenwalt* (1983), 204 Mont. 196, 663 P.2d 1178). In the case sub judice, the State contends that the only issue is whether any element of the offense of felony theft transpired beyond the exterior boundary of the Blackfeet Reservation.

¶13 Felony theft consists of two elements: "a knowing exertion of control and a purpose to deprive." Section 45-6-301(1)(a), MCA (Compiler's Cmts). The State does not contest the fact that both of these elements allegedly occurred within the Blackfeet Reservation. However, the State asserts that both elements also occurred outside the Blackfeet Reservation when Eagle Speaker transported the horses to Shelby, Montana. The District Court concluded that the alleged theft occurred within the Blackfeet Reservation when Eagle Speaker first allegedly obtained unauthorized control over the horses and that

because felony theft is not a continuing offense and because later acts consonant with the intent to deprive do not create a second violation, the theft occurred wholly within the Reservation.

¶14 The District Court's decision is sound. In *State v. Mullin* (1994), 268 Mont. 214, 886 P.2d 376, we concluded that felony theft is not a continuing offense for the purpose of tolling the statute of limitations. Rather, we concluded that the statute of limitation began running on the offense of felony theft once every element occurred, referring to our earlier decision in *State v. Hamilton* (1992), 252 Mont. 496, 830 P.2d 1264. In *Hamilton,* we noted:

> A particular offense should not be construed as continuing "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one."

*Hamilton, 252 Mont. at 500, 830 P.2d at 1267 (quoting Toussie v. United States (1970), 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161) (alteration in the original).*

¶15 Applying the reasoning of *Mullin* to these facts leads to the conclusion that a theft is complete once all the elements of theft transpired. There is no dispute that Eagle Speaker's charged conduct constituted a completed crime of theft within the confines of the Blackfeet Reservation. Accordingly, Eagle Speaker's subsequent transportation of the allegedly stolen property off of the Reservation would not subject him to prosecution in the district courts of Montana under § 46-2-101, MCA. The State has not persuaded us that the reasoning of *Mullin* should not apply to the jurisdictional question at issue here.

¶16 The State attempts to distinguish *Mullin* by pointing out that the *Mullin* decision involved the question of *when* an offense occurred under the applicable statute of limitation, while the instant case involves the question of *where* an offense occurred for purposes of jurisdiction. The State argues that the different policies underlying statutes of limitation and jurisdictional provisions require that we reach a different conclusion regarding the continuing nature of theft for jurisdictional purposes. The State notes that while the purpose of a statute of limitation is to prevent punishment based on stale allegations and to encourage investigation of suspected criminal activity, the purpose of a jurisdictional statute is to ensure that a constitutionally adequate nexus exists between the defendant's conduct and the jurisdiction to whose criminal laws he is subjected.

¶17 We agree that whether an offense has already occurred or is based on a continuing course of conduct will not necessarily be the same for resolving both limitation and jurisdictional issues. However, we do not believe this distinction requires that we reach a different conclusion in this case. Notwithstanding the State's protestations, the central holding of *Mullin* is that theft is not a continuing offense. In *Mullin,* we stated that the plain language of the theft statute, § 45-6-301, MCA, does not state that theft is a continuing offense. We further noted that the nature of the crime does not compel a conclusion that the legislature intended the crime of theft to be treated as continuing. *Mullin*, 268 Mont. at 218, 886 P.2d at 378. Whether in the context of a jurisdictional or a limitation issue, theft is simply not a continuing offense.

¶18 Significantly, we also note that prosecution for felony theft under § 45-6-301(1)(a), MCA, *does not require* proof of either the transportation or the attempted selling of stolen goods, the only two events which the State alleges occurred off of the Reservation. The theft, if it occurred, clearly occurred on the Blackfeet Reservation when Eagle Speaker exerted control over the horses with the intent to deprive their owners of the horses. It stretches the imagination to conclude that the theft occurred anywhere but on the Blackfeet Reservation.

¶19 The State maintains, however, the District Court's reliance on *Mullin* is mistaken because of subsequent legislative changes to the statute of limitation made in response to the *Mullin* decision. The changes to § 45-1-205(7)(b), MCA, suggest that the legislature was concerned that a criminal defendant might escape prosecution by stealing property for his own use and then concealing possession of it beyond the statutory limitation period. The amendment attempted to correct the perceived anomaly by providing that the continued possession or unauthorized control of the property after the five-year limitation period makes theft a continuing crime tolling the statue of limitation, but only for one year after discovery by the investigating officer. Significantly, the change was made to the statute of limitation provision, § 45-1-205(7)(b), MCA, not to the substantive theft statute. As we clearly stated in *Hamilton*, we will not deem an offense continuing "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." *Hamilton*, 252 Mont. at 500, 830 P.2d at 1267 (quotation omitted). Neither is present here. The substantive theft statute has remained unchanged and there is certainly nothing intrinsic about theft to conclude that it is a continuing offense.

¶20 Alternatively, the State maintains that *Mullin* can be read to stand for the proposition that the transportation of stolen goods into Montana is sufficient to subject a person to prosecution for felony theft in a Montana district court. Mullin was charged with the theft of two snowmobiles stolen in North Dakota and subsequently discovered in Richland County, Montana. By Information, the State alleged that Mullin had either stolen the snowmobiles or received the stolen snowmobiles and then concealed them. We affirmed the dismissal of charges because the Information and supporting affidavits alleged that the property was stolen on January 12, 1988, and the prosecution was commenced over six years later, one year after the statute of limitations had expired. From these facts, the State argues that a necessary premise of *Mullin* was that there was a cognizable offense under Montana law over which a Montana court had jurisdiction. Otherwise, the statute of limitation would not have begun running. In other words, the State infers that the transporting of stolen property into Montana must have been a cognizable offense which subjected Mullin to prosecution in a Montana court. By analogy, the State contends that once Eagle Speaker transported allegedly stolen property off the Blackfeet Reservation and into Montana, he was subject to prosecution in a Montana court.

¶21 It is not necessary to reach the inference that the State draws from *Mullin*. First, as the State admits, we did not have to reach the jurisdictional question in *Mullin* in order to affirm the dismissal of the Information on limitation grounds. Regardless of whether the District Court had jurisdiction, Mullin could not be tried because the charges were untimely. Second, one of the elements shared by both of the offenses which the State had charged Mullin with was concealment of stolen property. *See* § 45-6-301(1)(b) and (3)(b), MCA (1993). It is clear that the concealment of the two snowmobiles occurred in Montana on the premises Mullin leased for his trucking business. From our recitation of the facts in *Mullin*, there is absolutely no indication that the element of concealment occurred outside of Montana. Accordingly, unlike the Information charging Eagle Speaker with felony theft, an element of each offense with which Mullin was charged, concealment, transpired in Montana.

¶22 Lastly, the State argues that if we conclude that theft is not a continuing offense for jurisdictional purposes, it will have untoward policy ramifications. The State contends that under similar reasoning a hypothetical defendant could be prosecuted in Montana for assault to a person who had been kidnaped outside Montana and transported into this state, so long as the assault occurred in Montana, but could not be prosecuted for the offense of aggravated kidnaping if the kidnaping had occurred before the victim was brought into Montana. This conclusion ignores both the express language of § 46-2-101, MCA, as well

as our previous decisions interpreting its provisions. As discussed above, § 46-2-101(1), MCA, permits prosecution for a crime if at least one of the elements of that crime occurs in Montana. *See State v. Kills on Top* (1990), 241 Mont. 378, 385, 787 P.2d 336, 340. In *Kills on Top*, we concluded that the defendant could be prosecuted for aggravated kidnaping in a Montana district court because the victim was restrained and beaten by the defendant within Montana. *Kills on Top*, 241 Mont. at 386, 787 P.2d at 341. Under the State's hypothetical, the defendant could be prosecuted in Montana for assault and aggravated kidnaping because, as in *Kills on Top*, one of the elements of aggravated kidnaping, the assault, occurred within our jurisdiction.

¶23 The State also claims that affirming the District Court's decision would mean that a person could not be prosecuted for accountability under § 45-2-302(3), MCA, if that person, knowing that property was stolen, agreed to find a buyer for that property, so long as the theft occurred outside of Montana and the person charged with accountability exerted no control over the property. However, we do not see how our conclusion would prevent a person from being prosecuted for accountability in Montana if an element of the aiding or abetting occurred in Montana.

¶24 We conclude that the offense of theft occurs for jurisdictional purposes where the elements of that offense take place. From the Information and supporting affidavit, it is clear that the State has alleged that Eagle Speaker exerted unauthorized control with the intent to deprive within the exterior boundaries of the Blackfeet Reservation. Accordingly, because Eagle Speaker allegedly committed theft on the Blackfeet Reservation, the District Court was without jurisdiction to hear the State's charges.

¶25 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ JAMES E. PURCELL

District Judge, sitting for Justice William E. Hunt, Sr.

/S/ THOMAS C. HONZEL

District Judge, sitting for Justice James C. Nelson