No. 86-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA, CITY OF EUREKA,

       Plaintiff and Respondent,

  -vs-

RONALD RAY McDOLE,

       Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Scott B. Spencer, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        David W. Harman, Libby, Montana

Submitted on Briefs: Dec. 4, 1986

Decided: March 23, 1987

MAR 23 1987

Filed:

_Ethel M. Harrison_

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

After a jury trial in the Nineteenth Judicial District, Lincoln County, appellant was convicted of driving under the influence of alcohol (DUI) and leaving the scene of an accident. We affirm.

The issues are:

1. Did the District Court err in admitting evidence obtained by a city police officer during a warrantless search outside the city limits?

2. Did the District Court err by not instructing the jury on the mental state element of the DUI charge?

In November 1985, Mr. McDole was driving on the Pinkham Mountain Road near Eureka, Montana. Four witnesses testified at the District Court jury trial that Mr. McDole was driving erratically and swerving from side to side on the road. One of the witnesses who had observed Mr. McDole's driving called the Eureka police department to report Mr. McDole as a possible DUI driver. In addition, a fifth witness at the trial testified that Mr. McDole's vehicle hit her vehicle while she was stopped at a stop sign in the city limits and then backed up and left the scene of the accident. This fifth witness testified she then followed Mr. McDole to his residence, recorded his license plate number, and proceeded to the police station to report the accident.

A Eureka police officer responded to the possible DUI and leaving the scene of the accident call and drove to Mr. McDole's residence less than a mile outside the Eureka city limits. There, he confirmed that the truck in the driveway fit the dispatcher's description of the vehicle and license plate number involved in the accident and that the truck hood was still warm. Mr. McDole was arrested, given a breath

2

test, and identified by the witness whose car had been hit. Mr. McDole's breath sample indicated a .23 alcohol content.

Mr. McDole was charged with violation of § 61-8-401, MCA, driving under the influence, and § 61-7-105, MCA, duty to give information and render aid. Mr. and Mrs. McDole and two of Mr. McDole's sisters testified on the defendant's behalf at the jury trial. Mr. McDole's defense was that a defective wheel bearing caused his vehicle to swerve, that he had not been in an accident, and that he had begun drinking only after arriving at home.

At the District Court jury trial, Mr. McDole was convicted of DUI and leaving the scene of an accident. He was sentenced to 180 days (with all but 7 days suspended) and fined $500 for the DUI, which was his second offense, and $100 for his failure to stop at an accident scene. Mr. McDole appeals.

I

Did the District Court err in admitting evidence obtained by a city police officer during a warrantless search outside the city limits?

Mr. McDole argues that his arrest was illegal because it was made outside the Eureka city limits and without an arrest warrant. He believes that because the arrest was illegal all evidence resulting from the arrest, including the breath test results, should have been excluded from evidence at the lower court level. Mr. McDole maintains that because the City of Eureka could not produce a statute authorizing its police officers to make arrests within five miles of the city limits in accordance with § 7-32-4301, MCA, the police officer was without authority to arrest him. We disagree.

In Montana a city or town may authorize its police force to make arrests within 5 miles of a city pursuant to § 7-32-4301, MCA, which provides:

3

> The city or town council has power to make regulations authorizing the police of the city or town to make arrests of persons charged with crime:
> (1) within the limits of the city or town;
> (2) within 5 miles thereof; and
> (3) along the line of water supply of the city or town.

If Eureka had enacted an ordinance authorizing its police officers to make arrests within 5 miles of the Eureka city limits, this issue would not be here. However, Eureka did not enact such an ordinance.

There is no question that Mr. McDole's arrest would have been legal under § 46-6-401(1)(d), MCA, if that arrest had been made within the Eureka city limits. Section 46-6-401(1)(d), MCA, provides:

> A peace officer may arrest a person when: . . . (d) he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest.

The hit and run accident in particular, as well as the reported erratic driving, clearly required Mr. McDole's immediate arrest in order to prevent his getting in additional accidents and possibly seriously injuring someone. In addition, the preservation of Mr. McDole's blood alcohol content required his immediate arrest. State v. Ellinger (Mont. 1986), 43 St.Rep. 1778, 1780, ___ P.2d ___, ___. However, Mr. McDole's arrest was not made within Eureka so we cannot rely on § 46-6-401(1)(d), MCA, but can only use it as guidance.

It is a well established general rule that a law enforcement officer acting outside his jurisdiction without a warrant may not make arrests. An exception to this rule is the arrest made under circumstances which would authorize a

4

private citizen to make the arrest. See generally: Annot., Validity, In State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Jurisdiction, When Not in Fresh Pursuit, 34 A.L.R. 4th 328 (1984); 5 Am.Jur.2d Arrests § 50, (1962, Supplement 1986); and Restatement (Second) of Torts § 121 (1965, Supplement 1975, 1984).

In Montana, a private citizen may make an arrest pursuant to § 46-6-502, MCA, which provides:

> A private person may arrest another when:
> (1) he believes on reasonable grounds that an offense is being committed or attempted in his presence;
> (2) a felony has in fact been committed and he believes on reasonable grounds that the person arrested has committed it; or
> (3) he is a merchant, as defined in 30-11-301, and has probable cause to believe the other is shoplifting in the merchant's store.

By enacting § 7-32-4301, MCA, (allowing a town to authorize a police force to make arrests within 5 miles of town), § 46-6-502, MCA, (authorizing private citizens to make arrests), and § 46-6-411, MCA, (authorizing a peace officer from another state who enters this state in close pursuit to make an arrest), it is clear Montana no longer adheres to the old common law rule strictly prohibiting arrests outside an officer's jurisdiction.

A police officer outside his jurisdiction has not lost his characteristics of being a citizen and has all the arrest capabilities that a private citizen has. Thus, we hold that if an arrest by a private citizen would be lawful under the existing circumstances, the arrest by an officer out of his jurisdiction would be lawful.

In this case, the record discloses that an individual called the Eureka police department reporting Mr. McDole as a possible DUI suspect at 4:41 p.m. A police officer was

5

dispatched to intercept Mr. McDole. Then a second person involved in an accident with Mr. McDole went to the police station at 4:55 p.m. and reported the accident, reported Mr. McDole's leaving the scene of that accident, and reported where Mr. McDole was parked. The police officer previously dispatched was re-routed to the address .8 of a mile outside the Eureka city limits and arrived at Mr. McDole's residence at 5:05 p.m. He confirmed that the truck parked there fit the dispatcher's identification of the vehicle and license number involved in the earlier incidents and that the truck hood was warm. The officer testified that Mr. McDole came out of his residence, walked up to the officer with his hands in the air, appeared intoxicated, and said: "Take me! Take me!" The officer then arrested Mr. McDole for leaving the scene of the accident, took him to the station at 5:08 p.m., read him the DUI forms, gave him a breath test, filled out the requisite arrest forms, and had the woman involved in the hit and run identify Mr. McDole.

With that background, there is no question that both the private citizen who observed Mr. McDole's erratic driving and the private citizen involved in the accident with Mr. McDole could have arrested Mr. McDole pursuant to Montana's citizen arrest statute. In this case, the trained Eureka police officer, armed with the citizen reports and his own observations, also had the authority to make the arrest in his capacity as a private citizen.

The Eureka police officer confirmed the citizen reports by positively identifying the truck, with its warm hood, involved in the erratic driving and accident. Perhaps the strongest confirmation came when Mr. McDole stepped out of his house in an apparently intoxicated condition, held his hands out, and said: "Take me! Take me!" This statement confirmed the likelihood that Mr. McDole was the driver of

6

the truck when it was involved in the hit and run and erratic driving.

We conclude that the Eureka police officer, acting in his capacity as a private citizen, made a valid arrest of Mr. McDole. This result is in harmony with Montana's criminal statutes which intend to limit injury of person or property. If the police officer had not arrested Mr. McDole, it is quite possible that he might have commenced driving again in his intoxicated condition and critically injured himself or others. Accordingly, Mr. McDole's arrest was legal and all the evidence from that arrest was admissible.

## II

Did the District Court err by not instructing the jury on the mental state element of the DUI charge?

Mr. McDole maintains that § 45-2-103(1), MCA, requires one of three mental states to be proven for all but absolute liability offenses. Section 45-2-104, MCA, provides that absolute liability cases are limited to offenses subject to fines not exceeding $500. A person convicted of a DUI can be fined more than $500 and sentenced to jail time. Therefore, Mr. McDole maintains that DUI is not an absolute liability offense and thus requires a mental state jury instruction. We disagree.

Title 45 covers crimes generally and the mental state requirement found in § 45-2-101, MCA, applies to those crimes. The DUI statute, § 61-8-401, MCA, falls under the motor vehicle section of the Montana Code Annotated. If a person is under the influence of alcohol or drugs and in physical control of a vehicle on the ways of Montana open to the public, then that person can be found guilty of driving under the influence. Section 61-8-401, MCA. As a leading DUI expert states:

7

> Drunk driving legislation is intended to prohibit drunken operation "under any and all circumstances." The act of driving a vehicle under the influence of alcohol or drugs, or both, is "itself the crime." The state is not required to show "any particular mental state" except that the driver was "under such influence." If intent were an element of the offense, situations could arise in which defendants could not be convicted under the statute because they were too intoxicated to form the requisite intent. The paradoxical and absurd result would be that the more intoxicated the driver became the better his chances of avoiding liability under the statute.

Erwin, Defense of Drunk Driving Cases § 1.05 (1986). Put another way, the District Court Judge in this case stated: "Well, it doesn't make any difference what your state of mind is, you just don't operate cars on the highway under the influence."

We hold that the District Court did not err by not instructing the jury on the mental state element of Mr. McDole's DUI charge. Driving under the influence is an absolute liability offense not requiring the proof of a mental state by the State.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

8

_____
Justices

9