No.  90-012

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

LARRY JOE SUNFORD,

    Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Clinton H. Kammerer, Kammerer Law Offices, Missoula,
Montana

    For Respondent:

        Hon.  Marc  Racicot,  Attorney  General,  Helena,
Montana; Elizabeth L. Griffing, Asst. Atty. General,
Helena,  Montana;  Robert  Deschamps,  III,  County
Attorney, Missoula, Montana; Barbara Harris, Deputy
County Attorney, Missoula, Montana

Submitted:  April 19, 1990

Decided:  September 7, 1990

FILED

'90 SEP 7 PM 1 29

ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendant and appellant, Larry Joe Sunford, was found guilty by a jury empaneled in the Fourth Judicial District Court, Missoula County, of one count of driving while under the influence of alcohol, a misdemeanor, and one count of speeding, a misdemeanor. He appeals. We affirm.

The following issues are presented for our consideration:

1. Did the District Court err in concluding that an airport security officer, outside his jurisdiction, may make a valid citizen's arrest?

2. Did the District Court err in denying defendant's motion to dismiss for lack of a speedy trial?

Between 1:30 and 2:00 a.m. on January 26, 1989, defendant, Larry Joe Sunford, was driving on U.S. Highway 10 West when Donald Disney, a security officer for the Missoula County Airport Authority, recorded his speed with a radar detection gun at 78 mph. The speed limit on the highway was 55 mph.

Disney turned on the lights on top of his car and stopped defendant's vehicle. After talking with and observing defendant, Disney arrested him for driving while under the influence and excessive speeding. All events, the recording of the speed by the security officer, the stop and the arrest, occurred outside of the grounds of the Missoula County Airport.

On April 7, 1989, trial began in Missoula County Justice Court. After examining Disney, defendant moved to dismiss the case on the grounds that the security officer lacked the authority to make the stop and arrest because the events took place outside of

2

his area of jurisdiction. The Justice Court granted the motion. The State appealed to the District Court.

In District Court, defendant again moved to dismiss on the grounds that the security officer lacked authority to arrest the defendant. The motion was submitted on briefs on July 10, 1989. The court denied the motion on August 24, 1989.

The District Court then scheduled the case for trial for October 10, 1989. On September 15, 1989, defendant moved to dismiss for lack of a speedy trial. The motion was denied on October 13, 1989.

Following a jury trial held October 17, 1989, defendant was found guilty of one misdemeanor count of driving while under the influence, a second offense, in violation of § 61-8-401, MCA, and one misdemeanor count of speeding in violation of § 61-8-310, MCA. Judgment was entered on November 28, 1989. Defendant now appeals.

The first issue is whether the District Court erred in concluding that an airport security officer, outside his jurisdiction, may make a valid citizen's arrest.

While a municipality or a county may appoint airport guards or police with full police powers, the jurisdiction of such officers extends only to enforcing ordinances, resolutions, rules and orders enacted for the management, government and use of the airport. Section 67-10-301, MCA. The State therefore concedes that Donald Disney, the airport security officer, did not act within his jurisdiction when he stopped and arrested defendant on U.S. Highway 10 West, outside of the boundaries of the Missoula County Airport.

3

The State argues that the arrest was nevertheless lawful under the precedent established in State v. McDole, 226 Mont. 169, 734 P.2d 683 (1987). In that case, we held that a police officer could make a valid arrest outside of his jurisdiction if a private citizen could have made a lawful arrest under the same circumstances. We stated:

> A police officer outside his jurisdiction has not lost his characteristics of being a citizen and has all the arrest capabilities that a private citizen has. Thus, we hold that if an arrest by a private citizen would be lawful under the existing circumstances, the arrest by an officer out of his jurisdiction would be lawful.

McDole, 226 Mont. at 172, 734 P.2d at 685.

Defendant contends that McDole does not apply in this case because an airport security officer has less general authority than a city police officer. As the District Court observed, however, the extent of the arresting officer's jurisdiction is not the issue. The security officer in the present case admittedly exceeded the scope of his jurisdiction whatever its extent. The issue is whether he made a valid citizen's arrest.

A private citizen may make a lawful arrest in any one of the following situations:

> (1) [H]e believes on reasonable grounds that an offense is being committed or attempted in his presence;
>
> (2) a felony has in fact been committed and he believes on reasonable grounds that the person arrested has committed it; or
>
> (3) he is a merchant, as defined in 30-11-301, and has probable cause to believe the other is shoplifting in the merchant's store.

Section 46-6-502, MCA.

In the present case, the District Court found that the

4

security officer had reasonable grounds to believe that an offense was being committed in his presence. We agree.

The security officer's radar detection device recorded defendant's speed at 78 mph, 23 miles over the speed limit. Defendant's excessive rate of speed could easily have been observed and approximated by a private citizen, even without the aid of a radar gun. In addition, when he alighted from the car after being stopped by the security officer, defendant smelled of alcohol, swayed back and forth and slurred his speech. A private citizen, after noting defendant's demeanor, could have reasonably believed that defendant had been driving under the influence of alcohol.

Because a private citizen could have made a valid citizen's arrest under these circumstances, the District Court did not err in concluding that the security officer, although acting outside his jurisdiction, lawfully arrested defendant.

The second issue raised for review is whether the District Court erred in denying defendant's motion to dismiss for lack of a speedy trial.

Montana law requires a defendant who is charged with a misdemeanor to be brought to trial within six months after entry of plea. Section 46-13-201(2), MCA, provides:

> The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed if a defendant whose trial has not been postponed upon his application is not brought to trial within 6 months after entry of plea upon a complaint, information, or indictment charging a misdemeanor.

Defendant argues that this statute was violated because he did not receive a full trial in District Court until more than nine

5

months after entering his plea in Justice Court. We do not agree.

The six-month rule contained in § 46-13-201(2), MCA, does not apply in circumstances where the defendant is tried in justice court and the judgment is appealed for trial de novo in district court. State v. Schnell, 107 Mont. 579, 582, 88 P.2d 19, 20 (1939). In State v. Knox, 207 Mont. 537, 541, 675 P.2d 950, 952 (1984), we reaffirmed the holding of Schnell, stating:

> It appears that Section 46-13-201(2), MCA, is inapplicable to a trial de novo in District Court. A trial de novo is a "new trial," one which does not strictly speaking, arise out of entry of plea upon a complaint but arises out of an appeal.

Once an action is appealed from justice to district court, it is treated as if it were a new trial. Questions regarding speedy trial in cases concerning new trials are analyzed under the constitutional standards of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See Knox, 207 Mont. at 541-42, 675 P.2d at 952.

In the present case, defendant was charged and entered his plea on January 26, 1989. Trial in Justice Court commenced on April 7, 1989. After defendant examined the security officer, he moved to dismiss the case and the court granted the motion.

The statutory six-month rule was complied with when the initial trial began in Justice Court on April 7, 1989. It is immaterial that the trial was not fully tried in Justice Court at that time. What is material is that the trial commenced within six months after defendant entered his plea. Such action in the initial forum is all that is required by § 46-13-201(2), MCA.

We must now examine the rest of the speedy trial issue under

6

the Barker constitutional analysis. Four factors figure into the analysis: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right by the defendant; and (4) the prejudice to the defense. Barker, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

The first element, the length of the delay, is of primary importance. Unless the delay is presumptively prejudicial, we need not consider the remaining factors. If we find that the delay is presumptively prejudicial, the state must rebut the presumption by proffering a reasonable explanation for the delay and demonstrating that the defendant was not prejudiced. State v. Curtis, 787 P.2d 306, 313, 47 St.Rep. 277, 283 (Mont. 1990).

In determining the length of the delay, we first look to the overall time period that elapsed between the Justice Court order that allowed the appeal for trial de novo in District Court and the commencement of the trial in District Court. We initially calculate this time period without considering whether the delay was caused by defendant's own actions. Curtis, 787 P.2d at 313, 47 St.Rep. at 284.

Whether the length of the delay is presumptively prejudicial depends on the facts of each case; no particular time frame automatically triggers a speedy trial inquiry. More complex actions may warrant a longer delay than relatively simple cases. Curtis, 787 P.2d at 314, 47 St.Rep. at 285.

In the present case, 193 days elapsed between April 7, 1989, the date of dismissal in Justice Court, and October 17, 1989, the date of trial in District Court. Although the delay is slightly

7

over six months, we hold that it is presumptively prejudicial, considering the fact that the case consisted of the relatively simple misdemeanor charges of driving under the influence and speeding. See State v. Bailey, 201 Mont. 473, 655 P.2d 494 (1982) (delay of 186 days triggered speedy trial analysis in case involving felony charge of attempted sale of dangerous drugs); State v. Fife, 632 P.2d 712, 38 St.Rep. 1334 (1981) (delay of 194 days presumptively prejudicial in case involving robbery charge); State v. Sanders, 163 Mont. 209, 516 P.2d 372 (1973) (delay of six months and 22 days provoked further inquiry in case involving two counts of second degree assault).

The burden therefore shifts to the State to explain the reason for the delay and to show that defendant was not prejudiced by the delay. To explain the delay, the State points to the motions to dismiss filed by defendant. The State correctly notes that, if the decision on a motion filed by the defendant actually delays the setting of the trial date, the delay is charged to the defendant and not the State. Curtis, 787 P.2d at 315, 47 St.Rep. at 286.

Here, defendant filed his first motion to dismiss on June 16, 1989, alleging that the security officer lacked the authority to make a lawful arrest. The State responded on June 30, 1989 and defendant filed his reply on July 10, 1989. The court denied the motion on August 24, 1989. This period of time, from June 16 to August 24, 1989, a total of 69 days, must be charged to the defendant because it appears that the court delayed setting the trial date until rendering a decision on the motion.

On September 8, 1989, the court scheduled the trial for

8

October 10, 1989. On September 15, 1989, defendant filed a motion to dismiss for lack of speedy trial. The State filed its opposition to the motion on September 29, 1989, and the District Court denied the motion on October 13, 1989. This time period, from September 15 to October 13, 1989, a total of 28 days, is also charged to the defendant as the trial was delayed pending the outcome of the motion.

All told, of the 193 days between the trial in Justice Court and the trial de novo in District Court, 97 must be attributed to defendant, leaving only 96 chargeable to the State. A delay of 96 days is not sufficiently prejudicial to defendant to constitute a violation of his right to a speedy trial. The District Court did not err in denying the motion to dismiss for lack of a speedy trial.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9