JUSTICE TRIEWEILER
concurring in part and dissenting in part.
I concur with the majority’s conclusions in response to Issues 1, 3, 4, 5, 6, and 8.1 dissent from the majority’s resolution of Issues 2 and 7.
I dissent from the majority’s conclusion that Aaron D. Romero was not denied a speedy trial for the same reason that I specially concurred in this Court’s decision in State v. Mantz (1994), 269 Mont. 135, 139, 887 P.2d 251, 254 (Trieweiler, J., and Hunt, J., specially concurring). Romero was charged with misdemeanor offenses in Justice Court on August 5, 1993, and entered his plea on August 9, 1993. The charges against him were dismissed in Justice Court on November 30, 1994, and the State appealed to the District Court on that date. From the time of appeal until the time of Romero’s trial in District Court, 363 days passed. After appeal, no extension was ever requested by Romero. Section 46-13-401(2), MCA, requires that people charged with misdemeanors be brought to trial within six months. It does not make a distinction between pretrial delay injustice court and pretrial delay in district court. As I previously stated in Mantz, “[t]hat fictional distinction was created by this Court in State v. Sunford (1990), 244 Mont. 411, 796 P.2d 1084, by sheer judicial legislation. Therefore, I decline to follow that decision.” Mantz, 269 Mont. at 139, 887 P.2d at 254.
My position has not changed. Although I agreed in State v. Bullock (1995), 272 Mont. 361, 369, 901 P.2d 61, 67, that there was no basis *82 for distinguishing between cases that come to district court following trial in justice court, and those cases that come to district corut following some other disposition injustice court, that is not the issue presented in this case. Therefore, I restate my obj ection to this Court’s amendment of § 46-13-401(2), MCA.
I also conclude that the District Court erred when it denied Romero’s motion for a mistrial based on the State’s failure to comply with the plain terms of § 46-15-322(l)(b), MCA, which required that in response to the defendant’s request the State produce all written or oral statements that the defendant had made.
In addition to § 46-15-322(l)(b), MCA, the State was required by the District Court’s March 28, 1994, omnibus order to provide the defendant with copies of any statements he had made. None were provided. Neither was there any suggestion that the defendant had made a confession in either the State’s trial brief or the State’s opening statement. Then, after calling Warden Jeff Scott as its witness, the State elicited the following testimony from Scott:
Q. Okay. Did he admit to you at any time either on tape or off tape the hunting violations?
A. Yes, he did off tape.
Q. How did he — what did he say to admit?
A. He indicated that he was certainly involved in the elk and the antelope or deals that were alleged to have been committed on the reservation, and that he wouldn’t indicate to his involvement as far as the actual killer or the killing shots that killed some of the elk that were alleged to have been killed on the reservation, but he indicated that he was shooting at them.
Q. Did he admit or deny hunting bear while he was suspended?
A. He admitted to that.
Q. Did he admit or deny hunting elk while his privileges to hunt were suspended?
A. He admitted to that as well.
Q. Did he admit or deny wasting elk carcass?
A. He admitted to that as well.
Q. Did he admit or deny wasting antelope carcass?
A. He admitted to that as well.
Q. Did he admit or deny hunting an antelope while his privileges were suspended?
A. He admitted to that as well.
*83 Q. Did he appear to understand what you were talking to him about?
A. Yes, sir, he did.
Q. Did he appear to be under the influence of any intoxicating substance or chemical at that time?
A. No, sir, not to me he didn’t.
Q. Any reason to believe in your mind that he didn’t understand what you were talking to him about?
A. No, sir.
Q. Did he, at any time during your conversation with him that day, offer to you the excuse that someone else had made him do what he was charged with doing?
A. No, sir.
We recently held in State v. Ford (1996), 278 Mont. 353, 926 P.2d 245, that a mistrial is appropriate when there is a “demonstration of manifest necessity or when the defendant has been denied a fair and impartial trial.”
Romero was clearly denied a fair trial when the State inferred prior to trial that he had made no confession of guilt and then called a law enforcement officer who stated unequivocally at trial that Romero had admitted guilt to all of the violations with which he was charged.
While the majority winks at this gross violation of pretrial discovery rules based on concessions made by the State’s witness during cross-examination, the concessions were anything but unequivocal. That part of Scott’s testimony, which is referred to in the majority opinion, continued with the following argumentative responses:
Q. That is nothing more than your assumptions based on an inference; is that true?
A. Based on experience.
Q. Based on an inference; is that true?
A. Inference with experience, counselor.
Q. And Aaron Romero never admitted to you those — that he’s guilty in those offenses?
A. Not in those exact words.
In other words, in spite of the fact that Scott was called to testify unequivocally that Romero had previously admitted guilt, and in spite of the fact that the State had refused to disclose this alleged admission of guilt prior to trial, in violation of statute and the court’s orders, and in spite of the further fact that Scott apparently had no factual basis for his misrepresentation, he still left the jury, following *84 cross-examination, with the inference that an admission had been made. Romero had no opportunity to prepare for or respond to this critical testimony, and no other conclusion can be drawn than that on this basis he was denied a fair and impartial trial.
The majority states that “the report from which Officer Scott made the inference of a confession was available to Romero in pretrial discovery.” However, there was nothing in the report to which the majority refers which even remotely suggested that the State would contend that Romero made a confession of guilt.
For these reasons, I dissent from the majority’s conclusions which resolved Issues 2 and 7.1 would reverse the judgment of the District Court.