No. 98-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 323

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RUDY STANKO,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Penelope S. Strong, Livingston, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Patricia J. Jordan, Assistant Attorney General, Helena, Montana; Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs: August 20, 1998

Decided: December 24, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Defendant Rudy Stanko (Stanko) appeals his conviction in the District Court for the Tenth Judicial District, Fergus County, of two counts of reckless driving. We affirm.**

**¶2. We address the following issues on appeal:**

**¶3. 1. Does § 46-13-401(2), MCA, providing a six-month period in which to try misdemeanors, apply to a trial *de novo* in District Court?**

**¶4. 2. Was Stanko bound by his counsel's consent to a continuance as to one count which was joined for trial with a second count in which Stanko was representing himself?**

**¶5. 3. Did the District Court err in denying Stanko's motion to dismiss in which he argued that no one was injured and excessive speed could not be the sole basis for a charge of reckless driving?**

**¶6. 4. Did the District Court err in denying Stanko's Motion to Dismiss for Selective Prosecution?**

**¶7. 5. Is § 61-8-301, MCA, prohibiting reckless driving, unconstitutionally vague as applied to the facts in this case?**

No

**¶8. 6. Did the District Court err in denying Stanko's proposed jury instruction defining wanton and willful conduct?**

**Factual and Procedural Background**

**¶9. On August 13, 1996, at 11:45 a.m., Highway Patrol Officer Barb Lobdell was southbound on U.S. 87 near mile marker 33 when she observed a 1996 purple Camaro driving north at a high rate of speed. Officer Lobdell turned on her radar unit and clocked the vehicle as it crested a hill. The radar unit indicated that the vehicle was traveling 117 mph. Officer Lobdell activated her lights and set off in pursuit of the vehicle. The vehicle slowed down as it approached a semi-trailer and stopped when the driver noticed the lights of Officer Lobdell's patrol car. Officer Lobdell cited Stanko, the driver of the vehicle, for reckless driving pursuant to § 61-8-301, MCA. The citation read: "Reckless Driving! 117 mph over Crest of Hill on Narrow Road Moderate Traffic." This charge will be referred to throughout this opinion as "the Lobdell charge."**

**¶10. On October 1, 1996, at 4:30 p.m., Highway Patrol Officer Virginia Kinsey was driving north on U.S. 87 near mile marker 31 when she observed a 1978 Lincoln Continental coming toward her at a high rate of speed. Her visibility was momentarily cut off by a hill. When she observed the vehicle drive over the crest of the hill, she activated her radar unit and clocked the vehicle at 121 mph. Officer Kinsey cited Stanko, the driver of the vehicle, for reckless driving pursuant to § 61-8-301, MCA. The citation read, "operate a vehicle in a reckless manner 121 mph coming over crest of hill." This charge will be referred to throughout this opinion as "the Kinsey charge."**

**¶11. The two charges were joined for trial in Justice Court and Stanko was convicted of two counts of reckless driving. He appealed to the District Court for a trial *de novo*. On June 25, 1997, the District Court held a scheduling conference and subsequently issued a scheduling order wherein trial was set for September 4, 1997. The scheduling order did not specify a time limit for the filing of pretrial motions other than that they were to be filed so that they could be heard before trial. In this order the court recognized that Stanko intended to represent himself on the Lobdell charge and an attorney would represent him on the Kinsey charge.**

¶12. On September 2, 1997, Stanko filed several pretrial motions regarding the Lobdell charge including a Motion to Dismiss for Selective Prosecution and a Motion to Dismiss for Vagueness and for Failure to have Knowledge or Intent. On September 5, 1997, the State filed a motion to continue the trial set for September 4, 1997, as Officer Kinsey was unavailable for trial due to an unexpected hospital stay. The motion was dated September 2, 1997, and the certificate of service accompanying the motion noted that it was mailed to Stanko and his counsel on September 3, 1997. Although the State declared in its motion that Stanko's counsel did not object to a continuance, it did not mention Stanko's position as to the continuance.

¶13. On September 2, 1997, the District Court held an in-chambers conference on the State's motion and, by order dated September 6, 1997, the court continued the matter until December 29, 1997. Stanko's counsel was present at this conference, but Stanko was not. Stanko subsequently filed a written objection to the motion to continue contending that it violated his right to a speedy trial. He specifically objected to the court proceeding with the hearing without him, to the setting of a new trial date, to his counsel's failure to consult with him regarding the continuance and to the court's failure to timely notify him of the hearing. On November 17, 1997, the court denied Stanko's various pretrial motions giving no basis for its denial of those motions.

¶14. A trial by jury was held on December 29, 1997. Prior to trial, Stanko's counsel objected to the trial going forward on the grounds that Stanko's speedy trial rights had been denied since he was not brought to trial within six months as provided for in § 46-13-401(2), MCA. The court denied this objection on the grounds that § 46-13-401(2), MCA, does not apply to appeals from justice court.

¶15. At trial, Officer Kinsey testified that the two-lane road upon which Stanko was traveling was narrow with a one-foot shoulder and a sloped embankment. She stated that although farm and ranch vehicles and machinery use the road, traffic in the area was light that day. However, she had observed pheasants at the side of the road and she was aware that deer frequented the area. She testified that she cited Stanko for reckless driving because he was traveling at an excessive speed over a hill where he had no visibility and if he had encountered anything in the road, he would not have been able to stop.

¶16. Officer Lobdell testified that she cited Stanko for reckless driving because he was endangering everyone on the road by traveling at a high speed on a narrow road as he crested a hill. She also testified that although traffic in the area was moderate on the day she cited Stanko, there was the potential for tourist traffic on the road, such as campers and boats, as well as farm and ranch vehicles.

¶17. At the close of the State's case, Stanko and his counsel moved for a directed verdict on both counts. The court denied the motion.

¶18. In his defense, Stanko testified that he drives approximately 6,000 miles per month and that he has never had an accident. He admitted that he was consciously driving at speeds of 117 mph and 121 mph at the times he was cited. However, he contended that he was not acting recklessly as his vehicles are in good condition and he is accustomed to driving at high speeds since he had raced stock cars at one time.

¶19. The jury found Stanko guilty on both counts. The court sentenced him to a fine of $250 on each count and to 30 days in jail on the Lobdell charge and 120 days in jail on the Kinsey charge with the sentences to run concurrently. Stanko appeals the District Court's judgment and sentence.

## Issue 1.

¶20. *Does § 46-13-401(2), MCA, providing a six-month period in which to try misdemeanors, apply to a trial de novo in District Court?*

¶21. Stanko contends that he was denied his right to a speedy trial because § 46-13-401(2), MCA, unequivocally states that anyone charged with a misdemeanor offense in Montana's courts must be brought to trial within six months of their first appearance. Stanko notes that more than six months elapsed between May 27, 1997, when he appealed to the District Court for a trial *de novo,* and December 29, 1997, when his trial was held.

¶22. Stanko concedes that this Court ruled in *State v. Mantz* (1994), 269 Mont. 135, 887 P.2d 251, that § 46-13-401(2), MCA, does not apply to trials *de novo* on appeal from justice court. However, he contends that we should overrule our holding in *Mantz* on the basis that the speedy trial statute does not distinguish between district

court *de novo* trials and justice or city court trials. Furthermore, he argues that *Mantz* is outmoded in light of the 1997 amendment of § 46-17-201, MCA, that requires a defendant charged with a misdemeanor to elect one jury trial by right, either in the justice or city courts, or to reserve jury trial on a *de novo* appeal to district court.

¶23. Section 46-13-401(2), MCA, provides, in pertinent part:

*After the entry of a plea* upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within 6 months. [Emphasis added.]

Under the plain language of this statute, the six-month time period within which the defendant must be brought to trial on a misdemeanor charge, runs from the entry of a plea upon that charge. In an appeal to district court, the defendant does not enter a plea as the matter is treated as an appeal for trial *de novo*. Stanko would have this Court read into the statute a meaning that was clearly not intended by the legislature. That is not the function or duty of this Court. *See* § 1-2-101, MCA.

¶24. In addition, Stanko's contention that *Mantz* is outmoded in light of § 46-17-201, MCA, which requires a defendant to elect one jury trial, is without merit. Whether the disposition in justice court was by a jury trial, a bench trial, or on motion, has no effect on whether § 46-13-401(2), MCA, is applicable to trials *de novo* in district court.

¶25. Therefore, we will continue to follow *Mantz* and the long line of cases wherein we have held that § 46-13-401(2), MCA, applies to the initial trial in justice court and does not apply to trials *de novo* on appeal to the district court. *See State v. Romero* (1996), 279 Mont. 58, 926 P.2d 717; *State v. Bullock* (1995), 272 Mont. 361, 901 P.2d 61; *State v. Sunford* (1990), 244 Mont. 411, 796 P.2d 1084; *State v. Knox* (1984), 207 Mont. 537, 675 P.2d 950. As we stated in *Mantz*:

Once an action is appealed from justice to district court, it is treated as if it were a new trial. Questions regarding speedy trial in cases concerning new trials are analyzed under the constitutional standards of *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101.

No

*Mantz*, 269 Mont. at 138, 887 P.2d at 253 (quoting *Sunford*, 244 Mont. at 416, 796 P.2d at 1087).

¶26. Stanko failed to make any argument in the District Court or in his brief to this Court based on the criteria set forth in *Barker*. However, since Stanko did raise the speedy trial issue, albeit under § 46-13-401(2), MCA; since he claims that his right to a speedy trial in District Court was violated by the State's continuance; and because a *Barker* review is necessary to our determination of his District Court speedy trial claim, a review under the criteria set forth in *Barker* is warranted.

¶27. The *Barker* test requires that we consider: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Additionally, prejudice to the defendant is analyzed by assessing three interests which the right to a speedy trial was designed to protect: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the defendant's anxiety and concern; and (3) the avoidance of impairment of the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

¶28. In our recent decision in *City of Billings v. Bruce*, 1998 MT 186, ___ P.2d ___, 55 St.Rep. 750, this Court clarified how it will apply the *Barker* factors to determine whether a defendant has been denied his or her right to a speedy trial. We first consider the length of the delay from the time the charges are filed or, as in the case before us, the date the notice of appeal from justice court was filed, until the defendant's trial date. *Bruce*, ¶ 55. Stanko filed his notice of appeal from justice court on May 27, 1997, and his trial was held on December 29, 1997. That is a delay of 216 days. We established in *Bruce* that a delay of 200 days will trigger further speedy trial analysis. *Bruce*, ¶ 55.

¶29. Next, we consider the reason for the delay. *Bruce*, ¶ 56. In the case before us, the State requested a continuance of the September 4, 1997 trial because one of the State's witnesses, Officer Kinsey, was in the hospital. Trial was rescheduled for December 29, 1997, creating a delay of 116 days. However, on September 2, 1997, the same date the State requested a continuance and only two days prior to the originally scheduled trial date, Stanko filed several motions with the District Court including a Motion to Dismiss for Selective Prosecution and a Motion to Dismiss for Vagueness

and for Failure to have Knowledge or Intent. While the court granted the continuance based upon the unavailability of one of the State's witnesses, it is not unreasonable to assume that the court would also have granted a continuance to allow the State to respond to Stanko's several pretrial motions. Thus, we cannot say that the delay in this case is attributable solely to the State or solely to Stanko.

¶30. Nevertheless, we stated in *Bruce*, that if a delay attributable to the State is less than 275 days, the burden remains on the defendant to demonstrate prejudice. *Bruce*, ¶ 56. Hence, in the case *sub judice*, since the delay was less than 275 days, it is immaterial whether we attribute that delay to the State or to Stanko because the burden to demonstrate prejudice remains with Stanko.

¶31. Stanko satisfied the third *Barker* criteria by asserting his right to a speedy trial when he filed his *pro se* "Objection To Ignoring The Defendant's Right(s) To, But Not Limited To, Represent Himself; Due Process; and Right to Speedy Trial" on September 30, 1997, regarding the Lobdell charge and when his counsel noted during the final pre-trial conference on the morning of trial that he also objected on speedy trial grounds as to the Kinsey charge. We held in *Bruce*, that if the right to a speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong of *Barker* is satisfied. *Bruce*, ¶ 57.

¶32. Our consideration of the fourth *Barker* criteria relating to prejudice includes the traditional considerations of pretrial incarceration, anxiety and concern to the defendant, and impairment of the defense. *Bruce*, ¶ 58. As we already noted in our consideration of the second *Barker* criteria, the burden for demonstrating prejudice did not shift to the State but remained with Stanko. Stanko has failed to meet this burden. He was not incarcerated prior to trial and he has not demonstrated that he experienced anxiety or concern or that his defense was impaired in any way by the delay.

¶33. Accordingly, we hold that Stanko's right to a speedy trial was not violated.

## Issue 2.

¶34. *Was Stanko bound by his counsel's consent to a continuance as to one count which*

*was joined for trial with a second count in which Stanko was representing himself?*

¶35. Stanko contends that the attorney representing him on the Kinsey charge could not bind him to a waiver of his right to a speedy trial on the Lobdell charge in which he was representing himself. This argument is without merit.

¶36. Stanko's counsel consented to the continuance within his authority to act on the Kinsey charge. If one count was continued with the consent of the defense, then the other count would have to be continued also. The motion to sever the two counts had previously been denied on grounds of judicial economy.

¶37. More importantly, Stanko failed to allege that he was prejudiced in any way by the continuance. It is disingenuous for Stanko to argue that the trial should have been held as originally scheduled when Stanko filed several motions just two days prior to the scheduled trial date. The scheduling order specified that pretrial motions were to be filed in time to be heard before trial. Stanko did not give the State any notice or opportunity to respond to these several motions prior to the first trial setting. Even if the State had not requested a continuance due to Officer Kinsey's illness, the trial would most likely have been continued to allow the State to respond to Stanko's motions.

¶38. Accordingly, we hold that Stanko was bound by his counsel's consent to a continuance.

Issue 3.

¶39. *Did the District Court err in denying Stanko's motion to dismiss in which he argued that no one was injured and excessive speed could not be the sole basis for a charge of reckless driving?*

¶40. The District Court denied Stanko's Motion to Dismiss for Failure to Establish the Necessary Elements in which Stanko contended, with respect to the Lobdell charge, that no person or property was harmed by his conduct and that excessive

speed could not be the sole factual basis for a charge of reckless driving under § 61-8-301, MCA. Stanko contends on appeal that the District Court erred in not granting his motion.

¶41. The grant or denial of a motion to dismiss in a criminal case is a question of law, thus our review is plenary; we will review the district court's conclusion to determine whether it is correct. *City of Helena v. Danicheck* (1996), 277 Mont. 461, 463, 922 P.2d 1170, 1172 (citing *State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195; *State v. Rushton* (1994), 264 Mont. 248, 255, 870 P.2d 1355, 1359).

¶42. Contrary to Stanko's assertions, Officer Lobdell did not base her citation solely on the fact of Stanko's speed. Indeed, the citation itself states: "Reckless Driving! 117 mph *over Crest of Hill on Narrow Road* Moderate Traffic." (Emphasis added.) Furthermore, Officer Lobdell testified at trial that she cited Stanko for reckless driving because he was endangering everyone on the road due to the high speed, the narrow road, and the hill crest. She also testified that although traffic in the area was moderate on the day she cited Stanko, there was the potential for tourist traffic such as campers and boats as well as ranch and farm vehicles and trucks.

¶43. Stanko's argument that speed alone may not constitute reckless driving is beside the point. Neither officer cited Stanko for reckless driving based solely on speed. Rather, both officers considered speed plus the other factors referred to above. Other jurisdictions have long held that excessive speed under some circumstances may constitute willful or wanton disregard for the safety of others. *See State v. Lunt* (R.I. 1969), 260 A.2d 149, 152; *State v. Pruett* (Idaho 1967), 428 P.2d 43; *Norfolk v. State* (Wyo. 1961), 360 P.2d 605. We agree with these authorities. While "[t]here may be a point at which the speed becomes so excessive, the danger of injury to the passenger so probable, that such extreme speed alone might be held to be willful misconduct," *People v. Nowell* (Cal.App.Dept.Super.Ct. 1941), 114 P.2d 81, 83 (quoting *Fisher v. Zimmerman* (Cal.Ct.App. 1937), 73 P.2d 1243, 1246), that is not the fact situation here and our decision is not premised on Stanko's speed alone.

¶44. In addition, and again contrary to Stanko's contentions, § 61-8-301, MCA, does not require that there be an actual injury before the conduct may be considered reckless.

(1) A person commits the offense of reckless driving if he:

No

(a) operates any vehicle *in willful or wanton disregard for the safety of persons or property. . . .*

Section 61-8-301, MCA (emphasis added).

¶45. Finally, Stanko imagines himself to be a "champion race-car driver" because he won a few stock-car races in Oregon almost twenty years ago. He testified that he was consciously driving 117 mph and 121 mph at the times he was cited, but that this conduct was not reckless because he is accustomed to driving at high speeds. While Stanko's driving abilities may be legend in his own mind, we are not impressed. Unfortunately, Stanko fails to realize that racing conditions are far different from highway conditions and that Montana highways are not controlled racetracks. While Stanko may be willing to risk his own life and property traveling the highways at grossly excessive speeds as though he is still on a racetrack, other motorists do not assume the risk of driving in racetrack conditions when they travel Montana's highways. In point of fact, Montana's highways are used by senior citizens, parents hauling small children, farmers and ranchers moving machinery, school buses, commercial vehicles, and bicyclists, all of whom typically drive at less than "racetrack" speeds. Other motorists, as well, in driving and in overtaking and passing vehicles rightfully expect that following and oncoming traffic will be moving at a reasonably prudent and safe speed. Few would gauge their driving in anticipation that coming over the crest of the next hill will be a car traveling at well over 100 mph being driven by one who believes that he is on the Autobahn. Moreover, even if Stanko were to only injure or kill himself in a high-speed crash, his conduct still would be responsible for putting on the highway and at risk the emergency personnel and vehicles that would most surely have to respond. Furthermore, any person who drives in this State is aware that wild and domestic animals frequently cross Montana's roads and highways. It is common experience that trying to avoid wildlife or livestock on a road, without crashing, is difficult enough while driving at a reasonable and prudent highway speed; it is nearly impossible while driving at speeds well over 100 mph.

¶46. In short, it is clear that, under the conditions at issue here, Stanko unquestionably operated his vehicle "in willful or wanton disregard for the safety of persons or property." Section 61-8-301, MCA. Accordingly, we hold that the District Court was correct in denying Stanko's Motion to Dismiss for Failure to Establish the

**Necessary Elements of the reckless driving offenses with which he was charged.**

**Issue 4.**

**¶47.** *Did the District Court err in denying Stanko's Motion to Dismiss for Selective Prosecution?*

**¶48. Stanko contended that he was selectively prosecuted for reckless driving on what should have been a speeding charge, on the basis of his beliefs and political views. In his Motion and Brief for Discovery, Stanko requested that the State turn over to him all records of referrals to the Fergus County Attorney's Office and arrests by police officers relating to cases involving § 61-8-301, MCA. The State responded that all such information is a matter of public record and may be reviewed at the office of the Clerk of the Justice Court during regular hours of operation.**

**¶49. The District Court denied Stanko's discovery request along with his Motion to Dismiss for Selective Prosecution. As we stated in our discussion in the previous issue, our review of a district court's grant or denial of a motion to dismiss is plenary.** *Danicheck,* **277 Mont. at 463, 922 P.2d at 1172 (citations omitted).**

**¶50. Both officers testified that they did not know who was driving the speeding vehicles when they pulled them over, thus the citation could not have been based on Stanko's beliefs and political views. They also testified that they would have issued a similar citation to any individual that they encountered traveling at those speeds, on that road and under those conditions.**

**¶51. Furthermore, the selective enforcement of a criminal law, without more, does not constitute a constitutional violation.** *State v. Maldonado* **(1978), 176 Mont. 322, 328-29, 578 P.2d 296, 300.**

"[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" absent an allegation and showing that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification" such as sex, or the exercise of the First Amendment right to free speech.

*Maldonado*, 176 Mont. at 329, 578 P.2d at 300 (citing *Oyler v. Boles (1962)*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446). See also *State v. Pease (1987)*, 227 Mont. 424, 428, 740 P.2d 659, 661.

**¶52. Stanko has failed to show that his selection was based upon an unjustifiable standard such as race, religion, or other arbitrary classification such as sex, or the exercise of the First Amendment right to free speech. Therefore, we hold that the District Court was correct in denying Stanko's Motion to Dismiss for Selective Prosecution.**

**Issue 5.**

**¶53.** *Is § 61-8-301, MCA, prohibiting reckless driving, unconstitutionally vague as applied to the facts in this case?*

**¶54. All statutes carry with them a presumption of constitutionality and it is the duty of the courts to, if possible, construe statutes narrowly to avoid an unconstitutional interpretation.** *State v. Nye* **(1997), 283 Mont. 505, 510, 943 P.2d 96, 99;** *State v. Lilburn* **(1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041** *cert denied* **(1995), 513 U.S. 1078, 115 S.Ct. 726, 130 L.Ed.2d 630;** *Montana Auto. Ass'n v. Greely* **(1981), 193 Mont. 378, 382, 632 P.2d 300, 303;** *State v. Ytterdahl* **(1986), 222 Mont. 258, 261, 721 P.2d 757, 759. Furthermore, when construing a statute, it must be read as a whole, and its terms should not be isolated from the context in which they were used by the legislature.** *Nye***, 283 Mont. at 510, 943 P.2d at 99;** *Lilburn***, 265 Mont. at 266, 875 P.2d at 1041;** *McClanathan v. Smith* **(1980), 186 Mont. 56, 61-62, 606 P.2d 507, 510. Statutes should be construed according to the plain meaning of the language used therein.** *Nye***, 283 Mont. at 510, 943 P.2d at 99;** *Lilburn***, 265 Mont. at 266, 875 P.2d at 1041;** *Norfolk Holdings v. Dept. of Revenue* **(1991), 249 Mont. 40, 43, 813 P.2d 460, 461.**

**¶55. When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional and any doubt is to be resolved in favor of the statute.** *Nye***, 283**

Mont. at 510, 943 P.2d at 99; *State v. Martel* (1995), 273 Mont. 143, 148, 902 P.2d 14, 17-18; *Monroe v. State* (1994), 265 Mont. 1, 3, 873 P.2d 230, 231; *GBN, Inc. v. Montana Dept. of Revenue* (1991), 249 Mont. 261, 265, 815 P.2d 595, 597.

¶56. A vagueness challenge to a statute or ordinance may be raised in two different connotations: (1) whether the statute or ordinance is so vague that it is rendered void on its face; or (2) whether it is vague as applied in a particular situation. *Nye*, 283 Mont. at 513, 943 P.2d at 101 (citing *Martel,* 273 Mont. at 149, 902 P.2d at 18; *City of Choteau v. Joslyn* (1984), 208 Mont. 499, 505, 678 P.2d 665, 668).

¶57. Stanko argues that § 61-8-301, MCA, is vague as applied to the facts in this case. He does not raise a facial vagueness challenge. Stanko raised the vagueness issue in his *pro se* Motion to Dismiss for Vagueness and for Failure to Have Knowledge or Intent regarding the Lobdell charge. The issue of vagueness was not preserved by Stanko's counsel regarding the Kinsey charge, thus, this issue is improperly raised as to that charge on appeal.

¶58. A statute challenged for vagueness as applied to a particular defendant must be examined in light of the conduct with which the defendant is charged in order to determine whether the defendant could reasonably understand that his conduct is proscribed. *United States v. Mazurie* (1975), 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L. Ed.2d 706; *United States v. National Dairy Prod. Corp.* (1963), 372 U.S. 29, 32-33, 83 S. Ct. 594, 598, 9 L.Ed.2d 561. On appellate review, the facts must be taken in the light most favorable to the State. *State v. Crisp* (1991), 249 Mont. 199, 204, 814 P.2d 981, 984; *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 437, 704 P.2d 1021, 1024.

¶59. It is well settled that a statute must be specific enough to give fair notice of the conduct prohibited and to provide a meaningful differentiation between culpable and innocent conduct. *State v. Conrad* (1982), 197 Mont. 406, 412, 643 P.2d 239, 242-43; *State v. Bush* (1981), 195 Mont. 475, 478-79, 636 P.2d 849, 851. However, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Monroe,* 265 Mont. at 3, 873 P.2d at 231 (quoting *National Dairy*, 372 U.S. at 32, 83 S.Ct. at 597).

¶60. Stanko argues that § 61-8-301, MCA, promotes discriminatory enforcement. As

an example, he asserts that Officer Lobdell and Officer Kinsey disagreed as to the speed at which they would charge someone with reckless driving as opposed to a basic rule violation. That is not the case. Officer Lobdell testified that speeds in excess of 110 mph would warrant a citation for reckless driving and Officer Kinsey testified that speeds nearing 120 mph would be unreasonable.

¶61. Stanko has not met his burden of proving, beyond a reasonable doubt, that § 61-8-301, MCA, is so vague, as applied to the facts involving the Lobdell charge, that he could not have reasonably understood that his conduct would be prohibited. Accordingly, we hold that § 61-8-301, MCA, is not unconstitutionally vague as applied to the facts in this case.

## Issue 6.

¶62. *Did the District Court err in denying Stanko's proposed jury instruction defining wanton and willful conduct?*

¶63. At the close of all of the evidence, both parties submitted jury instructions. The District Court refused Stanko's proposed instruction on the definition of wantonness and willfulness and gave the State's proposed instruction instead. Stanko contends that the court erred in refusing to give his proposed instruction.

¶64. We review the jury instructions given in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Weaver*, 1998 MT 167, ¶ 28, ___ P.2d ___, ¶ 28, 55 St.Rep. 668, ¶ 28 (citing *State v. Patton* (1996), 280 Mont. 278, 286, 930 P.2d 635, 639; *State v. Brandon* (1994), 264 Mont. 231, 237, 870 P.2d 734, 737; *State v. Lundblade* (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548. Moreover, we recognize that a district court has broad discretion when it instructs a jury. *Weaver*, ¶ 28 (citing *Patton*, 280 Mont. at 286, 930 P.2d at 639; *State v. Ross* (1995), 269 Mont. 347, 358, 889 P.2d 161, 167).

¶65. The jury instruction as proposed by Stanko and his counsel stated:

"Willful or Wanton Disregard" means that the defendant had an intentional lack of regard concerning the safety of others, or that he intentionally did something with knowledge that serious injury is a probable result.

The District Court correctly rejected this instruction on the basis that it contained an element--i.e., serious injury--that is not required by § 61-8-301, MCA. Instead, the District Court gave the State's proposed jury instruction which stated:

You are instructed that "willful" or willfulness implies an act done intentionally and designedly. "Wanton" or wantonness implies action without regard to the rights of others, a conscious failure to observe care, a conscious invasion of the rights of others, willful, unrestrained action.

**¶66. After reviewing all of the jury instructions given in this case, we conclude that they do fully and fairly instruct the jury on the law applicable to the case. Accordingly, we hold that the District Court did not abuse its discretion when it instructed the jury.**

**¶67. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ JIM REGNIER

No

Justice Terry N. Trieweiler specially concurring.

¶68. I agree with the result of the majority opinion. I do not agree with all that is stated in that opinion.

¶69. Specifically, I disagree with the majority's statement in ¶43 of the opinion that "we agree" that speed alone can serve as the basis for a reckless driving conviction. Without consideration of the surrounding circumstances, speed alone can never establish a willful or wanton disregard for the safety of others. If so, then what is the speed which under any circumstance would be deemed reckless? Motorists are entitled to know!

¶70. Is the speed at which the operation of a motor vehicle becomes reckless the same on Interstate 90 as on Highway 93 from Missoula to Polson? Is a reckless speed the same in a 1998 Porsche Carrera as in a 1981 Dodge Aries? Is it the same in bad weather as in good weather? Is it the same at nighttime as it is during daylight hours?

¶71. Obviously the answer to all the preceding questions is no, because speed without regard to other surrounding circumstances is meaningless.

¶72. I particularly object to inclusion of this advisory statement in the majority opinion since it is totally unnecessary to the opinion. Just before the advice is offered, the opinion correctly points out that: "Stanko's argument that speed alone may not constitute reckless driving is beside the point. Neither officer cited Stanko for reckless driving based solely on speed. Rather, both officers considered speed plus the other factors referred to above."

¶73. It is the portion of the opinion quoted in the preceding paragraph with which I agree. It is also the quoted portion of the opinion which makes the majority's speculative advice regarding "speed alone" both unnecessary and inappropriate.

¶74. If speed alone was the issue in this case, I would have concluded that it could not serve as the basis for a reckless driving charge unless the motorist charged had been given prior notice by the State of the speed at which his conduct violated the law. However, because speed alone is not the issue, neither is that advice necessary.

**¶75. For these reasons, I specially concur with the result of the majority opinion.**

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing specially concurring opinion.

/S/ WILLIAM E. HUNT, SR.